FILED

AUG 0 2 2019

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____
                      DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
~~SAN ANTONIO~~ **DIVISION**
DEL RIO

| | |
|---|---|
| ALEJANDRO GOMEZ NUNES,<br>　　　Detainee, Uvalde Border<br>　　　Patrol Station<br>　　　By his next friend;<br><br>LADY VANESSA MORENO<br>NOLASCO,<br><br>　　　Petitioner,<br>　　　As next friend of Alejandro<br>　　　Gomez Nuñes,<br><br>　　v.<br><br>KEVIN K. MCALEENAN, Acting<br>Secretary, United States Department of<br>Homeland Security; MARK<br>MORGAN, Acting Commissioner,<br>United States Customs and Border<br>Protection; FELIX CHAVEZ, Chief<br>Border Patrol Agent, Del Rio Sector;<br>CESAR ESCAJEDA, Chief Border<br>Patrol Agent, Uvalde Station,<br><br>　　　Respondents. | Case No.<br><br>**VERIFIED PETITION FOR WRIT**<br>**OF HABEAS CORPUS**<br><br>**DR19CV0042** |

## INTRODUCTION

1.     Petitioner seeks a Writ of Habeas Corpus on behalf of and as next friend to her common-law husband, Alejandro Gomez Nuñes ("Mr. Gomez"), because Respondents have held Mr. Gomez (Petitioner's husband) virtually incommunicado for the last 25 days. *See Padilla v. Rumsfeld*, 352 F.3d 695, 703-04 (2d Cir.2003), *rev'd on other grounds,* 542 U.S. 426 (2004) (finding

1  inaccessibility for purposes of next friend standing when petitioner being held

2  "incommunicado" and therefore unable to file the petition on his own behalf).

3  2.      Mr. Gomez is a 22-year-old man imprisoned by the federal government

4  under color of the immigration laws. Federal authorities arrested him on July 5,

5  2019 – nearly one month ago. Through this petition he seeks immediate release

6  from his incarceration. His continued imprisonment is unlawful because of the

7  confluence of three separate unlawful government practices: First, Respondents

8  have held Mr. Gomez virtually incommunicado. He had no contact with the

9  outside world for the first *twenty days* of his incarceration—including from family

10  and counsel—and since then has been permitted him only one three-minute phone

11  call with his attorney and a two-minute call with his wife. Second, although

12  Respondents have ostensibly held Mr. Gomez under color of the immigration laws,

13  they have incarcerated him for nearly a month without issuing a charging

14  document and without taking steps to determine whether he is entitled to remain in

15  the United States. Even as of today, they have assigned no deportation officer to

16  his case, and appear nowhere near scheduling him for a bond hearing before an

17  Immigration Judge. Third, they have imprisoned him with no charges in the Border

18  Patrol's temporary holding facility, a facility not appropriate for overnight stay—

19  let alone for a month-long incarceration.

20  3.      Under these unique circumstances, the Constitution requires his immediate

21  release from further imprisonment.

22  4.      At a minimum, this Court should order Mr. Gomez's immediate release

23  unless, within 24 hours, Respondents charge him under the immigration laws and

24  begin processing his case, and move him to a facility appropriate for longer-term

25  confinement.

26                          **JURISDICTION AND VENUE**

27  5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 2241

28  (habeas corpus); 28 U.S.C. § 1651 (All Writs Act); 28 U.S.C. § 1331 (federal-

1   question jurisdiction); Article I, Section 9, Clause 2 of the U.S. Constitution (the

2   Suspension Clause); and Article III of the U.S. Constitution.

3   6.      Venue is proper in the Western District of Texas pursuant to 28 U.S.C. §§

4   1391(b)(2) and (e)(1)(B) because a substantial part of the events or omissions

5   giving rise to this claim have transpired here, as Mr. Gomez is incarcerated here.

6   28 U.S.C. § 1391(b)(1), (e)(1)(A). Venue is also proper because Respondents are

7   officers or employees of the United States acting in their official capacities.

8   Additionally, venue is proper under the habeas statute because the federal

9   Respondents with custody over Mr. Gomez reside in this district. *See* 28 U.S.C. §

10  2243; *Rumsfeld v. Padilla*, 542 U.S. 426, 451-52 (2004) (Kennedy, J., concurring).

## PARTIES

11

12  7.      Lady Vanessa Moreno Nolasco (Ms. Moreno) is the wife of Mr. Gomez and

13  seeks a Writ of Habeas Corpus as next friend and on his behalf.

14  8.      Alejandro Gomez Nuñes (Mr. Gomez) is currently incarcerated at the

15  Uvalde Border Patrol Station in Uvalde ("Uvalde BP Station" or "Station"), Texas

16  by U.S. Customs and Border Protection ("CBP"). He has been imprisoned since

17  July 5, 2019.

18  9.      Respondent Kevin K. McAleenan is the Acting Secretary of the Department

19  of Homeland Security. Acting Secretary McAleenan has legal custody of Mr.

20  Gomez. He is named in his official capacity.

21  10.     Respondent Mark Morgan is the Acting Commissioner of CBP. Acting

22  Commissioner Morgan has legal custody of Mr. Gomez. He is named in his official

23  capacity.

24  11.     Respondent Felix Chavez is Chief Patrol Agent of the Border Patrol's Del

25  Rio Sector, which operates the Uvalde field station. He has legal custody of Mr.

26  Gomez. He is named in his official capacity.

27

28

12.     Respondent Cesar Escajeda is Chief Border Patrol Agent of the Border Patrol's Uvalde Station. He has legal custody of Mr. Gomez. He is named in his official capacity.

## FACTS

13.     Alejandro Gomez Nuñes came to the United States fleeing persecution in his home country of Honduras with his common-law wife, Lady Vanessa Moreno Nolasco, and Ms. Moreno's young daughter.

14.     On July 5, 2019, Mr. Gomez and his family were apprehended near the Eagle Pass Port of Entry. Border Patrol officers then arrested Mr. Gomez and separated him from his family.

15.     Respondents have kept Mr. Gomez jailed at the Uvalde BP Station since that date, July 5, 2019.

**Conditions at the Uvalde BP Station Are Horrific**

16.     Respondents have held Mr. Gomez and others detained at the Uvalde BP Station under horrific conditions.

17.     The notoriously abysmal conditions of BP stations throughout the country are well-documented in federal litigation and third-party reports. These facilities, termed "hieleras" (Spanish for "freezers") are typically small, concrete rooms with concrete or metal benches.[1] In Customs and Border Protection's own words, these facilities are "not designed for sleeping": they have no beds and showers are not guaranteed.[2] Nevertheless, Border Patrol routinely imprisons individuals in Border

---

[1] Cantor, Guillermo, <u>Detained Beyond the Limit: Prolonged Confinement by U.S. Customs and Border Protection Along the Southwest Border,</u> American Immigration Council, 1, (Aug. 2016) https://www.americanimmigrationcouncil.org/sites/default/files/research/detained_beyond_the_limit.pdf.

[2] *Id.* at 1 & n.7, 4 & n.18; *see also* Abigail Hauslohner and Maria Sacchetti, "Hundreds of Minors held at U.S. border facilities are there beyond legal time limits." The Washington Post, May 30, 2019 (quoting one CBP officials describing

(cont'd)

1  Patrol field stations for days or weeks.[3] An ACLU review of FOIA documents

2  from 2009-2014 from Border Patrol holding facilities along the Southern border

3  revealed "horrific detention conditions: children held in freezing rooms with no

4  blankets, food, or clean water; forced to sleep on concrete floors or share

5  overcrowded cells with adult strangers; [and] denied necessary medical care."[4]

6  Many individuals are suffering severe mental distress due to the extreme

7  conditions under which they are detained.

8  18.    Courts across the country have made factual findings about the horrific

9  conditions in Border Patrol holding facilities. For example, the District Court of

10  Arizona in *Doe v. Kelly* granted, and the Ninth Circuit affirmed, a preliminary

11  injunction ordering Border Patrol to address grave deficiencies in the Tucson

12  Sector stations' holding facilities. 878 F.3d 710, 716 (9th Cir. 2017) (detailing

13  unsanitary and unsafe conditions); *see also Flores v. Sessions*, No. 85-4544, ECF

14  No. 459-1 (C.D. Cal. July 16, 2018) (July 2018 Memorandum of Points and

15  Authorities in Support of Plaintiffs' Motion to Enforce Settlement detailing

16  physical and verbal assault, unsanitary drinking water, inedible food, freezing cell

17  temperatures, and inadequate sleeping conditions in ICE detention centers and

18  Border Patrol stations).

19  _____

the agency's Rio Grande Valley facilities as saying "I have no beds . . . Our
20  facilities are not built for long-term holding[.]").

21  [3] *See* Abigail Hauslohner and Maria Sacchetti, <u>Hundreds of Minors held at U.S.</u> <u>border facilities are there beyond legal time limits</u> The Washington Post (May 30,
22  2019),<u>https://www.washingtonpost.com/immigration/hundreds-of-minors-held-at-</u>
23  <u>us-border-facilities-are-there-beyond-legal-time-limits/2019/05/30/381cf6da-8235-</u> <u>11e9-bce7-40b4105f7ca0_story.html?utm_term=.6400c9454d36</u>

24  [4] ACLU of San Diego and Imperial Counties et al., <u>Neglect and Abuse of</u>
25  <u>Unaccompanied Immigrant Children by U.S. Customs and Border Protection</u>, 3, (May 2018) <u>https://www.aclusandiego.org/civil-rights-civil-liberties/</u> (reviewing
26  FOIA documents describing "horrific detention conditions: children held in freezing rooms with no blankets, food, or clean water; forced to sleep on concrete
27  floors or share overcrowded cells with adult strangers; [and] denied necessary
28  medical care").

1  **Immigrants at the Uvalde BP Station Are Denied Any Opportunity to Seek**
2  **their Release**

3  19.    Although ostensibly held under color of immigration law, Mr. Gomez has

4  not been afforded any of the process available under those laws. No one has issued

5  a Notice to Appear, the charging document that initiates removal proceedings. He

6  has not been assigned a Deportation Officer. No one has made an initial custody

7  determination—the determination as to whether he must remain in government

8  custody pending a determination on his right to remain in the United States, or

9  instead may be released on recognizance or bond—or afforded him the opportunity

10 to seek review of that determination before an Immigration Judge.

11 20.    According to the agents at the Uvalde BP Station, the soonest Mr. Gomez

12 (and others in his position) will have an opportunity to contest his continued

13 incarceration is upon his transfer to ICE custody.

14                    **LEGAL BACKGROUND AND CLAIMS**

15 21.    "Freedom from imprisonment—from government custody, detention, or

16 other forms of physical restraint—lies at the heart of the liberty that [the Due

17 Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Mr.

18 Gomez is entitled to release under the Due Process Clause because Respondents

19 have violated his rights in three related respects.

20          **A. Mr. Gomez's Incommunicado Detention Violates the Due Process**
21                **Clause**

22 22.    Respondents' conduct violates the Fifth Amendment's universal prohibition

23 against holding a prisoner incommunicado. *See, e.g., Oregon v. Elstad,* 105 S.Ct.

24 1285, 470 U.S. 298, 84 L.Ed.2d 222, 53 U.S.L.W. 4244 (1985); *Turner v.*

25 *Commonwealth of Pennsylvania*, 338 U.S. 62, 69 S.Ct. 1352, 93 L.Ed. 1810

26 (1949).

27

28

23.     Mr. Gomez also has a statutory right to defend himself in removal proceedings, assuming they are initiated against him, and to petition the government for any benefits he may be entitled to. 8 U.S.C. § 1229a(b)(4).

24.     Here, Mr. Gomez was held essentially incommunicado for twenty days, apart from one phone call he tried to make to his father-in-law, who did not answer. Mr. Gomez's family had no idea of his whereabouts.

25.     On July 29, 2019, the *twenty-first* day of his detention, Mr. Gomez's attorney, Ms. Hoffmann, was able to have a three-minute conversation with him. She was also able to pass him his wife's U.S. phone number, who he then spoke to for two minutes. Since that day, Mr. Gomez has again been held incommunicado. He has not been able to speak with his family to ease their (and his) anxiety, and they rightfully fear for his safety given the conditions of his confinement.

26.     Because Mr. Gomez has effectively been denied all access to the outside world for the vast majority of his incarceration, and because he is currently being held incommunicado, his detention violates the Due Process Clause.

27.     Similarly, Respondents' time limitation on attorney access interferes with Mr. Gomez's attorney-client relationship in violation of his right to Due Process.

**B. Mr. Gomez's Detention Violates the Due Process Clause Because Respondents Have Held Him Without Charge and Unreasonably Prolonged His Confinement**

28.     Mr. Gomez's continued incarceration is also unlawful because Respondents have yet to charge Mr. Gomez, even though he has been in their custody for *the past month*. This failure to act contravenes governing immigration laws and regulations, which require immigration officers to proceed against people they arrest "without unnecessary delay." 8 U.S.C. § 1357(a)(2); 8 C.F.R. § 287.3(d) (requiring that a determination as to continued custody and the issuance of a notice to appear ordinarily be made "within 48 hours" and, under certain exigent circumstances, "within an additional reasonable period of time").

1  29.     Even in terrorism cases, Congress has required the government to charge

2  people held under color of the Patriot Act's immigration provision in seven days,

3  and mandated release where no charges are brought within that time. 8 U.S.C. §

4  1226a(a)(5).

5  30.     Where the government fails to pursue removal proceedings, continued

6  immigration detention loses any connection to its sole legitimate purpose—

7  determining whether the government has a legal basis for deportation. *Demore v.*

8  *Kim*, 538 U.S. 510, 532-33 (2003) (Kennedy, J., concurring). Such unreasonable

9  delay renders further detention excessive, rather than reasonable, in relation to its

10  purpose.

11  31.     Following *Zadvydas* and *Demore*, every circuit court of appeals to confront

12  the issue has found either the immigration statutes or due process require a hearing

13  for noncitizens subject to unreasonably prolonged detention pending removal

14  proceedings. *See Sopo v. U.S. Attorney Gen.*, 825 F.3d 1199 (11th Cir.

15  2016)(detention under 8 U.S.C. §1226(c)); *Reid v. Donelan*, 819 F.3d 486 (1st Cir.

16  2016)(8 U.S.C. §1226(c)); *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015)(8

17  U.S.C. §1226(c)); *Rodriguez v. Robbins (Rodriguez III)*, 804 F.3d 1060 (9th Cir.

18  2015)(8 U.S.C. §1226(c) and 8 U.S.C. §1225(b)); *Diop v. ICE/Homeland Sec.*, 656

19  F.3d 221 (3d Cir.2011)(8 U.S.C. §1226(c)); *Diouf v. Holder (Diouf II)*, 634 F.3d

20  1081(8 U.S.C. §1231(a)); *Ly v. Hansen*, 351 F.3d 263 (6th Cir. 2003)(8 U.S.C.

21  §1226(c))(requiring release when mandatory detention exceeds a reasonable period

22  of time).

23  32.     Courts in the Fifth Circuit have also applied the canon of constitutional

24  avoidance to limit prolonged mandatory detention under Section 1226(c). *See*

25  *Ramirez v. Watkins*, No. 10-cv-126, 2010 WL 6269226 (S.D. Tex. Nov 03, 2010).

26  33.     As the government itself stated in recent Supreme Court litigation,

27  unreasonable delay "in pursuing and completing" removal proceedings "may

28  indicate that continued detention is actually for an impermissible collateral purpose

1    (or no purpose at all)." Brief of Petitioners at 48, *Jennings v. Rodriguez*, No. 15-

2    1204 (Aug. 26, 2016) (internal quotation marks omitted).

3    34.    Respondents have further violated Mr. Gomez's rights by prolonging his

4    incarceration without a determination that his detention is necessary to prevent

5    danger or flight, as required by law.

6    35.    The Due Process Clause guarantees that all noncitizens must be free from

7    detention that is arbitrary or capricious. *See Mathews v. Diaz*, 426 U.S. 67, 77, 87

8    (1976) (confirming that those "whose presence in this country is unlawful,

9    involuntary, or transitory" have due process rights). In order to comply with the

10   Due Process Clause, detention must therefore be reasonable in relation to its

11   purpose. *Jackson v. Indiana*, 406 U.S. 715, 738 (1972). In the immigration context,

12   the basic purposes of detention are to prevent flight and danger while the

13   deportation case is being litigated and, if the government wins, to ensure the

14   detainee appears for removal. *See Zadvydas*, 533 U.S. at 699 (explaining the

15   relevant detention statute's "basic purpose" as "to assure the alien's presence at the

16   moment of removal").

17   36.    For the past *month*, the government has taken literally no steps to determine

18   whether Mr. Gomez is a danger or a flight risk, or whether he is entitled to remain

19   in the United States. The government has not issued Mr. Gomez a Notice to

20   Appear, assigned a deportation officer to his case, conducted a custody

21   determination to determine if his confinement is necessary, permitted Mr. Gomez

22   to obtain review of his custody status by an Immigration Judge, or taken any other

23   steps to permit the adjudication of his claimed right to remain in this country. Mr.

24   Gomez's continued incarceration violates the Due Process Clause, and release is

25   warranted.

26          **C. Mr. Gomez's Incarceration Violates the Due Process Clause Because**

27              **the Conditions of His Imprisonment Constitute Punishment**

28

37.     Respondents have imprisoned Mr. Gomez under punitive conditions of confinement, even though he is not subject to punishment for any crime. This violates the Fifth Amendment. *Wong Wing v. United States*, 163 U.S. 228, 236-38 (1896).

38.     "[I]f a restriction or condition is not reasonably related to a legitimate goal — if it is arbitrary or purposeless — a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." *Bell v. Wolfish*, 441 U.S. 520, 539, 99 S.Ct. 1861, 1874 , 60 L.Ed.2d 468 (1979)(footnote omitted).

39.     The conditions under which Respondents have incarcerated Mr. Gomez leave no doubt that they intend to punish him. Mr. Gomez has no access to a bed, limited access if any to a shower or other hygiene items, limited access if any to hot food, and no access to medical care. *See supra* pp. 4-5.

40.     Whereas it was previously the Border Patrol's position that "a detainee should not be held for more than 12 hours,"[5] in 2015—with no intervening change in the conditions of its holding centers—the agency "updated" its standards: now, "[d]etainees should generally not be held for longer than *72 hours* in CBP hold rooms or holding facilities." U.S. Customs and Border Protection, "National Standards of Transport, Escort, Detention, and Search (Oct. 2015) (emphasis added).[6]

41.     Mr. Gomez's detention far exceeds the legal limit and CBP's own policy.

42.     Because the conditions of and motivation for Mr. Gomez's incarceration render it punitive, his continued incarceration violates the Due Process Clause.

---

[5] U.S. Border Patrol Chief David Aguilar, U.S.  Border Patrol Policy, Subject: Detention Standards, January 31, 2008, 3 at 6.2.1, https://www.documentcloud.org/documents/818095-bp-policy-on-hold-rooms-and-short-term-custody.html.
[6] Available at: https://www.cbp.gov/sites/default/files/assets/documents/2017-Sep/CBP%20TEDS%20Policy%20Oct2015.pdf.

**II.    Under the Unique Facts of This Case, the Due Process Clause Requires Mr. Gomez's Immediate Release**

43.    The Court should order Mr. Gomez's immediate release to remedy the due process violations described above.

44.    No other court or administrative tribunal can provide Mr. Gomez any relief. Under ordinary circumstances, Mr. Gomez could seek relief from the government's unreasonable delay in pursuing his removal case by filing a motion to terminate in immigration court. *See, e.g., In re Qayyum,* 2004 WL 848576 (B.I.A. Feb. 25, 2004) (considering motion to terminate on this basis and finding, on the facts of that case, no unreasonable delay). However, Respondent has no access to the immigration courts because he has not been charged. Even after 25 days of imprisonment, Mr. Gomez has yet to be issued a Notice to Appear.

45.    Respondents have proven themselves fundamentally unable to provide even rudimentarily safe conditions of confinement for Mr. Gomez at the Uvalde BP Station. Under these dire circumstances, any remedy short of immediate release would be insufficient. Simply put, Mr. Gomez cannot wait.

46.    If the Court declines to order Mr. Gomez's release, it should, at a minimum order that he be released unless Respondents, within 24 hours, charge Respondent via a Notice to Appear, transfer him to a nearby ICE Processing Center, make a custody determination in his case, and arrange for prompt review of that determination by an Immigration Judge (if the initial determination does not result in his release).

**CLAIMS FOR RELIEF**

**COUNT ONE**

**(Detention in Violation of the Procedural Due Process Guaranteed by the Fifth Amendment to the Constitution)**

47.    Petitioner realleges and incorporates by reference the allegations made above.

48.     The Fifth Amendment provides, "No person shall be . . . deprived of life, liberty, or property, without due process of law." Procedural due process requires individualized proceedings to provide adequate notice and a reasonable opportunity to respond to the charges resulting in confinement.

49.     To justify Petitioner's ongoing prolonged detention, due process requires that the government establish, at an individualized hearing before a neutral decisionmaker, that Petitioner's detention is justified by clear and convincing evidence of flight risk or danger, even after consideration whether alternatives to detention could sufficiently mitigate that risk.

50.     Mr. Gomez has not been charged with a Notice to Appear or indeed any charges. He has no way of contesting his confinement apart from the instant petition. Respondents have violated his procedural due process rights.

## COUNT TWO
### (Detention in Violation of the Laws and Regulations of the United States)

51.     Petitioner realleges and incorporates by reference the allegations made above.

52.     CBP standards state that: "Detainees should generally not be held for longer than *72 hours* in CBP hold rooms or holding facilities." U.S. Customs and Border Protection, "National Standards of Transport, Escort, Detention, and Search (Oct. 2015) (emphasis added).

53.     Mr. Gomez has been held for twenty-five days at the Uvalde border station. He shares a room with 17 other men and one toilet with no privacy. The lights are always on, making sleep difficult to impossible. The length of his detention in such conditions far exceeds CBP's own policy.

## COUNT THREE
### (Detention in Violation of the Substantive Due Process Guaranteed by the Fifth Amendment to the Constitution)

54.     Petitioner realleges and incorporates by reference the allegations made above.

55.    Substantive due process requires the government have a legitimate purpose in restricting an individual's liberty by detaining or incarcerating them.

56.    Because there is no reasonable relation between Mr. Gomez's detention and a government interest, because Mr. Gomez has effectively been denied all access to the outside world for the vast majority of his incarceration, and because the conditions of and motivation for Mr. Gomez's incarceration render it punitive, his continued incarceration violates the Due Process Clause.

<b><u>REQUEST FOR RELIEF</u></b>

57.    Petitioner respectfully requests that this Court:

    a.  Assume jurisdiction over this matter;

    b.  Issue the writ of habeas corpus and order Respondents to show cause, within three days of filing this petition, why the relief Petitioner seeks should not be granted; and set a hearing on this matter within five days of Respondents' return on the order to show cause, pursuant to 28 U.S.C. § 2243;

    c.  Order Mr. Gomez's immediate release; or,

    d.  In the alternative, order Mr. Gomez's release unless Respondents, within twenty-four hours, charge Respondent via a Notice to Appear, transfer him to a nearby ICE Processing Center, make a custody determination in his case, and arrange for prompt review of that determination by an Immigration Judge (if the initial determination does not result in his release);

    e.  Grant Petitioner attorneys' fees; and

    f.   Order any other relief that the Court deems just and equitable.

Respectfully submitted,

Dated: August 1, 2019            */s/ Karen Hoffmann*

13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Karen Hoffmann (motion for *pro hac vice*
admission to be filed)
SYRENA LAW
128 Chestnut Street, Suite 301A
Philadelphia, PA 19106
Tel: (412) 916-4509
karen@syrenalaw.com



_____

Curtis Doebbler (TX Bar No. 24105187)
REFUGEE AND IMMIGRANT CENTER
FOR EDUCATION AND LEGAL
SERVICES (RAICES)
802 Kentucky Avenue
San Antonio, TX 78201
Tel: (210) 226-7722
curtis.doebbler@raicestexas.org

*Attorneys for Petitioner*

**VERIFICATION PURSUANT TO 28 U.S.C. SECTION 2242**

I, Karen Hoffmann, hereby verify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the factual allegations in the foregoing petition are true and correct, on information and belief.

Dated: July 31, 2019

/s/ *Karen Hoffmann*
Karen Hoffmann (motion for *pro hac vice* admission to be filed)
SYRENA LAW
128 Chestnut Street, Suite 301A
Philadelphia, PA 19106
Tel: (412) 916-4509
karen@syrenalaw.com

**VERIFICATION PURSUANT TO 28 U.S.C. SECTION 2242**

I, Curtis Doebbler, hereby verify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the factual allegations in the foregoing petition are true and correct, on information and belief.

Dated: August 1, 2019

Curtis Doebbler (TX Bar No. 24105187)
REFUGEE AND IMMIGRANT CENTER
FOR EDUCATION AND LEGAL
SERVICES (RAICES)
802 Kentucky Avenue
San Antonio, TX 78201
Tel: (210) 226-7722
curtis.doebbler@raicestexas.org

Karen Hoffmann (motion for *pro hac vice* admission to be filed)
SYRENA LAW
128 Chestnut Street, Suite 301A
Philadelphia, PA 19106
Tel: (412) 916-4509
karen@syrenalaw.com

Curtis Doebbler (TX Bar No. 24105187)
REFUGEE AND IMMIGRANT CENTER FOR EDUCATION AND LEGAL SERVICES (RAICES)
802 Kentucky Avenue
San Antonio, TX 78201
Tel: (210) 226-7722
curtis.doebbler@raicestexas.org

*Attorneys for Petitioner*

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| ALEJANDRO GOMEZ NUNES, Detainee, Uvalde Border Patrol Station By his next friend; <br><br> VANESSA MORENO, <br><br> Petitioner, As next friend of Alejandro Gomez Nuñes <br><br> v. <br><br> KEVIN K. MCALEENAN, Acting Secretary, United States Department of Homeland Security; JOHN P. SANDERS, Acting Commissioner, United States Customs and Border Protection; FELIX CHAVEZ, Chief Border Patrol Agent, Del Rio Sector, <br><br> Respondents. | Case No. <br><br> **[PROPOSED] ORDER TO SHOW CAUSE** <br><br> **DR 19 CV 0042** |

The Court, having reviewed the Verified Petition for Habeas Corpus,

HEREBY ORDERS:

(1)   Respondents shall show cause, within three days of filing this petition, why the relief Petitioner seeks should not be granted, pursuant to 28 U.S.C. § 2243.

(2)   The parties shall appear for a hearing on this matter within five days of Respondents' return on this Order, pursuant to 28 U.S.C. § 2243.

(3)   Respondents shall immediately release Mr. Gomez; or,

(4)   In the alternative, Respondents shall, within twenty-four hours, charge Respondent via a Notice to Appear, transfer him to a nearby ICE Processing Center, make a custody determination in his case, and arrange for prompt review of that determination by an Immigration Judge (if the initial determination does not result in his release).

Dated: _____, 2019

_____
United States District Court Judge

1

## CERTIFICATE OF SERVICE

2

I hereby certify that the foregoing petition and its attached exhibits were

3

served on all counsel via the CM/ECF system on August 1, 2019.

4

5 Dated: August 1, 2019

Curtis Doebbler

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express™ shipments. Misuse may

# PRIORITY MAIL EXPRESS®

**UNITED STATES POSTAL SERVICE®**

EJ 075 522 076 US

R2307N15321-9-07

78840

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT)   PHONE ( 210 ) 780 0054

C.F. Doebler
RAICES
802 Kentucky Ave
San Antonio TX 78201

**DELIVERY OPTIONS (Customer Use Only)**

☐ SIGNATURE REQUIRED *Note:* The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.

**Delivery Options**
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available)
☐ 10:30 AM Delivery Required (additional fee, where available)
*"Refer to USPS.com® or local Post Office™ for availability.*

TO: (PLEASE PRINT)   PHONE ( 830 ) 703 2054

US District Court Clerk
111 E. Broadway St., Ste L100
Del Rio TX 78840

ZIP + 4® (U.S. ADDRESSES ONLY)

7 8 8 4 0 - 5 5 7 3

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.

**ORIGIN (POSTAL SERVICE USE ONLY)**

| | | |
|---|---|---|
| ☒ 1-Day | ☐ 2-Day | ☐ Military | ☐ DPO |

PO ZIP Code: 78205

Date Accepted (MM/DD/YY): 08/31/2019

Time Accepted: 213 ☐ AM ☒ PM

Scheduled Delivery Date (MM/DD/YY): 08/02/19

Scheduled Delivery Time: ☐ 10:30 AM ☒ 12 NOON ☐ 3:00 PM

10:30 AM Delivery Fee: $

Postage: $ 25.50

Insurance Fee: $

Return Receipt Fee: $

Sunday/Holiday Premium Fee: $

Total Postage & Fees: $ 25.50

Special Handling/Fragile: $

Weight: ___ lbs. ___ ozs.   ☐ Flat Rate

Acceptance Employee Initials

COD Fee: $

Live Animal Transportation Fee: $

PAYMENT BY ACCOUNT (if applicable)
USPS® Corporate Acct. No.
Federal Agency Acct. No. or Postal Service™ Acct. No.

**DELIVERY (POSTAL SERVICE USE ONLY)**

| | |
|---|---|
| Delivery Attempt (MM/DD/YY)   Time ☐ AM ☐ PM | Employee Signature |
| Delivery Attempt (MM/DD/YY)   Time ☐ AM ☐ PM | Employee Signature |

LABEL 11-B, MARCH 2019   PSN 7690-02-000-9996





**UNITED STATES POSTAL SERVICE®**

**VISIT US AT USPS.COM®**
ORDER FREE SUPPLIES ONLINE

PEEL FROM THIS CORNER

PRIORITY MAIL ★ EXPRESS™

FASTEST SERVICE IN THE U.S.

USED INTERNATIONALLY, CUSTOMS DECLARATION MAY BE REQUIRED.

EMS

July 2013   OD: 12.5 x 9.5

0001000006

